J-S70014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.H., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.D., MATERNAL AUNT | : : : : : : : | No. 1114 EDA 2016 |

Appeal from the Order Entered March 16, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0000576-2014

BEFORE:  OLSON, OTT, MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 28, 2016**

Appellant, T.D., the prior guardian and a female cousin[1] of C.H., ("Child), a female born in September of 2009, appeals from the order entered on March 16, 2016, finding Appellant abused Child pursuant to 42 Pa.C.S.A. § 6303(b) and thereby granting a petition filed by the Philadelphia Department of Human Resources ("DHS") for a permanency goal change to adoption.  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  In March 2011, Appellant obtained primary and legal custody of Child.  On January 16, 2014, Child tested positive for gonorrhea.  Thereafter,

_____

[1] The trial court also refers to Appellant as Child's maternal aunt.

DHS removed Child from Appellant's care. After Child was adjudicated dependent she was placed in the custody of DHS. On March 16, 2014, the trial court held a child abuse hearing. The doctor, who performed tests on Child for sexually transmitted diseases, testified that the four-year-old could not have contracted gonorrhea without penetrative sexual contact. It was undisputed that Appellant was the primary caregiver for Child at all relevant times. The trial court determined that there was clear and convincing evidence of child abuse as to Appellant and granted the petition filed by DHS for a permanency goal change to adoption. This timely appeal resulted.

On appeal, Appellant raises three interrelated issues, claiming that the trial court erred by finding: 1) child abuse regarding Appellant; 2) Appellant was a perpetrator by omission because she was primary caretaker; and 3) clear and convincing evidence of abuse. Appellant's Brief, at 8. Appellant concedes that the issues are consolidated and "essentially … appeals the court's finding of child abuse." *Id.*

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows:

> The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion[.]

*In Interest of L.Z.*, *A Minor Child*, 111 A.3d 1164, 1174 (Pa. 2015).

Further, our Supreme Court determined:

> [E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*Id.* at 1185.

We reviewed the certified record, the parties' briefs, the relevant law, and the trial court's opinion entered on May 18, 2016. The trial court found credible the doctor's testimony that Child must have contracted gonorrhea through sexual contact. The trial court further recognized that Appellant was the primary caregiver for Child and Child lived exclusively in Appellant's home when Child contracted the disease. The trial court presumed Appellant was the perpetrator of the abuse because Child would not have contracted gonorrhea but for Appellant's acts or omissions. Sexual exploitation, sexual abuse, and serious physical injuries inflicted upon Child showed clearly and convincingly that Child suffered child abuse as defined in 23 Pa.C.S.A. § 6303(b)(i)-(iii). The trial court further determined that Appellant did not offer rebuttal evidence; instead, she testified that she did not know how Child contracted gonorrhea. Upon review, we conclude there has been no error or abuse of discretion in this case and that the trial court's May 18,

2016 opinion meticulously, thoroughly, and accurately disposes of Appellant's issue on appeal. Therefore, we affirm on the basis of the trial court's opinion and adopt it as our own. Because we have adopted the trial court's opinion, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016

## IN THE COURT OF COMMON PLEAS
## FOR THE COUNTY OF PHILADELPHIA
## FAMILY COURT DIVISION

In the Interest of C.H.; a Minor      :      CP-51-DP-0000576-2014

:      FID: 51-FN-000549-2014

:

APPEAL OF: T.D., prior Guardian      :      1114 EDA 2016

**OPINION**

**Fernandes, J.:**

Appellant, T.D. ("Guardian"), appeals from the order entered on March 16, 2016, making a finding that child abuse existed as to Guardian pursuant to 23 Pa.C.S. §6303(b). Aaron Mixon, Esq., counsel for Guardian, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

**Factual and Procedural Background:**

On March 25, 2011, the Domestic Relations Court issued a custody order transferring primary physical and legal custody of C.H. ("Child") from K.D. ("Mother") to Guardian, Child's cousin. Child was roughly eighteen months old at the time. On January 16, 2014, Guardian's cousin D.D. ("Cousin") took Child to the office of family physician Dr. Millen Gebreselassi. Following this doctor's visit, DHS received a Child Protective Services ("CPS") report that Child had been brought to the doctor because she had a vaginal discharge, and had tested positive for gonorrhea. On October 7, 2014, at the adjudicatory hearing, the Child Advocate put the court on notice that she would be requesting a child abuse hearing regarding Guardian. Child was subsequently removed from Guardian's care, adjudicated dependent and placed in DHS custody. Due to requests for continuances, the child abuse hearing was not completed until March 16, 2016. DHS had already filed a petition for goal change and termination of parental rights to Child against Child's parents.

The court heard the child abuse hearing against Guardian on the morning of March 16, 2016. The trial on the termination of Mother's parental rights was held in the afternoon.[1] During the child abuse hearing, Dr. Gebreselassi testified that Cousin brought Child to the office because Child had a cough. Dr. Gebreselassi performed a routine physical examination and discovered "copious yellow discharge" issuing from Child's vagina. Cousin informed Dr. Gebreselassi that Child had had such discharge for a week. (N.T. 3/16/16, pg. 11). Child was swabbed for gonorrhea and chlamydia. Child was positive for gonorrhea. Child was four years old, and could not have contracted the disease without sexual contact. (N.T. 3/16/16, pgs. 12-13). Gonorrhea has an incubation time between two and seven days before symptoms manifest. It can cause long-term fertility issues. (N.T. 3/16/16, pgs. 14, 16). A four-year-old child contracting gonorrhea was evidence of sexual abuse. (N.T. 3/16/16, pg. 15). Dr. Gebreselassi testified that after the physical she called Guardian about Child's condition, and that Guardian thought Child had contracted the disease by putting a tissue in her vagina. (N.T. 3/16/16, pg. 17). DHS's sexual abuse investigator testified that she made visits to the home during the time when the incident occurred. She had no concerns regarding the safety of any children in Guardian's home, and testified that Guardian was an active and involved caregiver. She also testified that Guardian's older children misbehaved and committed crimes which caused the family to become involved with DHS. (N.T. 3/16/16, pgs. 21-23). The DHS investigator testified that she reviewed documents related to all the children in Guardian's care. (N.T. 3/16/16, pg. 23). The DHS investigator then testified that she had not reviewed all the documents related to the children in Guardian's care, and was not aware that Cousin had also been sexually abused in Guardian's home. (N.T. 3/16/16, pgs. 23-24). The DHS investigator was also not aware that Child had missed her scheduled physical. (N.T. 3/16/16, pgs. 25-26). Guardian testified that she did not take Child to her physical because two of her children were involved in criminal cases and their cases took up all of her time. (N.T. 3/16/16, pg. 28). Guardian testified that before the doctor's visit she walked in on Child using the toilet and noticed the discharge from Child's vagina. Guardian asked Child if anyone had touched her, and Child denied that anyone had. (N.T. 3/16/16, pgs. 28-29). Guardian testified that L.D., ("Daughter") her daughter, would sneak people into Guardian's house without Guardian's knowledge. (N.T. 3/16/16, pg. 31). Guardian moved from Daughter's house because Daughter's actions in sneaking

---

[1] Both hearings were held on the same day, but for the purposes of this opinion, references to the Notes of Testimony indicate the child abuse hearing only.

people in made Guardian feel the other children in the house were unsafe. Guardian testified that Daughter was not living in the house during January 2014, when Child likely contracted gonorrhea. (N.T. 3/16/16, pg. 33). Guardian testified that during January 2014, the following people were living in her house: Guardian, Child, Cousin, Cousin's child, M.D. ("Son 1"), J.D., ("Son 2") D.D., ("Son 3") and Daughter. (N.T. 3/16/16, pg. 33). After Child tested positive for gonorrhea, all these people were tested. Guardian testified that their results were all negative, but later testified that she did not have the results for any of her sons, because they were all removed from her care by DHS soon after. (N.T. 3/16/16, pgs. 34, 36). Guardian testified that she only ever left Child with Cousin and for some short periods with Daughter. Her sons were never allowed to be alone with Child. (N.T. 3/16/16, pgs. 32, 41). Guardian testified that her ex-husband P.B. ("Husband") sexually abused Daughter and Cousin while Daughter and Cousin were living with Guardian. (N.T. 3/16/16, pgs. 35-37). Guardian pled guilty to a charge of child endangerment regarding one of the other children living with her. (N.T. 3/16/16, pg. 41). The court found by clear and convincing evidence that there was child abuse as to Guardian, and that the CPS report alleging sexual abuse was founded. (N.T. 3/16/16, pgs. 49-50). On April 13, 2016, Aaron Mixon, Esq., counsel for Guardian, filed this appeal.

**Discussion:**

Guardian raises the following errors on appeal:

1. The trial court committed reversible error in making a finding that appellant, [Guardian], was a perpetrator by omission due to the fact that [Guardian] was the Primary Caretaker at the time.

2. The trial court committed reversible error in making a finding of child abuse regarding [Guardian].

3. The trial court's determinations set forth above were not supported by clear and convincing evidence.

All these issues on appeal were consolidated, wereby essentially Guardian appeals the court's finding of child abuse. Child abuse is defined at 23 Pa.C.S. §6303(b)(1)[2] as:

(i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

---

[2] Because the abuse in this case occurred in January 2014, the law in place at that time applies. The current definition of child abuse is found at 23 Pa.C.S. §6303(b.1).

(ii) An act or failure to act by a perpetrator which causes nonaccidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

Serious physical injury is any injury that "significantly impairs a child's physical functioning, either temporarily or permanently." Sexual abuse and sexual exploitation include the "employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct." 23 Pa.C.S. §6303(a). Child abuse must be found by clear and convincing evidence. However the identity of the perpetrator is dictated by statutory presumption. The person responsible for the welfare of the child is presumed a perpetrator of child abuse if the child sustains injuries which would not ordinarily be sustained absent some act or omission by the person responsible for the welfare of the child. 23 Pa.C.S. §6303(d), *In Interest of J.R.W.*, 631 A.2d 1019, 1023-1024 (Pa. Super. 1993). The person responsible for the child does not need to be physically present at the time the abuse occurred, so long as their failure to act allowed the abuse to occur while the child was in their care. *In re L.Z.*, 111 A.3d 1164, 1184 (Pa. 2015).

Guardian argues that the court erred in finding child abuse. Child in this case was four years old when she tested positive for gonorrhea. Dr. Gebreselassi testified that contracting gonorrhea can cause scarring of the fallopian tubes, damage to the ovaries and infertility. (N.T. 3/16/16, pgs. 12, 16). Dr. Gebreselassi also testified that Child could not have contracted gonorrhea without sexual contact, and that no environmental cause could have transmitted the disease. (N.T. 3/16/16, pgs. 12-13). Dr. Gebreselassi testified that for a child of Child's age to have gonorrhea indicated *per se* sexual abuse, because it showed that someone had had penetrative sex with a four-year-old. (N.T. 3/16/16, pg. 15). Damage to Child's fallopian tubes and future infertility constitute significant permanent or temporary impairment of Child's physical functioning, so they are serious physical injuries as defined by statute. Penetrative sex is clearly "sexually explicit conduct," and since Child could not have contracted gonorrhea any other way, Child's positive test indicates that Child engaged in sexually explicit conduct with another of the kind classified by statute as sexual abuse and sexual exploitation. Because Child could not have picked up the disease from the environment, only by penetrative sex, the serious physical injury and sexual abuse suffered by

Child were nonaccidental, constituting child abuse under 23 Pa.C.S. §6303(b)(1)(i) and (ii). Guardian testified that she had no idea how Child had contracted gonorrhea, or who had given it to Child. (N.T. 3/16/16, pg. 34). Guardian testified that all members of her household tested negative for gonorrhea, but later testified that she did not have test results for her three sons who had been living in the house during the time when Child contracted the disease. (N.T. 3/16/16, pgs. 33-34, 36). Guardian also testified that Daughter would sneak men into the house without Guardian's knowledge. (N.T. 3/16/16, pg. 31). Guardian's inability to stop Daughter from sneaking people in caused Guardian to fear for the welfare of the children in her home, so she moved away from Daughter. However, at the time when Child contracted gonorrhea, Daughter was again living in the home and had resumed sneaking men into the home at night. (N.T. 3/16/16, pgs. 31, 33). Guardian had plead guilty to child endangerment in the past. (N.T. 3/16/16, pg. 41). Guardian testified that Husband had sexually abused Daughter and Cousin in Guardian's home. (N.T. 3/16/16, pgs. 35-37). These facts, testified to by Guardian, were clear and convincing evidence of series of failures to act by a Guardian which created an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of Child, constituting child abuse under 23 Pa.C.S. §6303(b)(1)(iii). Guardian was unable to rebut the statutory presumption. DHS witnesses including Dr. Gebreselassi, the family doctor, were credible.

Guardian alleges that the court erred in finding that she was the perpetrator by omission of child abuse. Guardian had physical and legal custody of Child, since she had obtained a custody order on March 25, 2011. (N.T. 3/16/16, pg. 39). Guardian was the primary caregiver for Child. Dr. Gebreselassi testified that gonorrhea incubates for up to a week before symptoms appear. (N.T. 3/16/16, pg. 14). Child showed symptoms for about a week before she was taken to Dr. Gebreselassi's office on January 16, 2014. (N.T. 3/16/16, pgs. 11, 17). This indicates that Child contracted gonorrhea in December 2013 or January 2014. Guardian acknowledged that she was responsible for Child's welfare during that time. Guardian testified that she took care to make sure that only Cousin and Daughter were allowed to supervise Child. (N.T. 3/16/16, pg. 32). Guardian was the legal and physical custodian of Child, Child lived exclusively in Guardian's home and Guardian identified herself as the person with responsibility for Child's care during the December 2013 to January 2014 period when Child contracted gonorrhea. Because Child would not have contracted gonorrhea but for some act or omission by Guardian, while in Guardian's care,

Guardian is presumed to be the perpetrator of child abuse. Guardian did not offer any evidence to rebut this presumption. Guardian only testified that she did not know how Child contracted gonorrhea. (N.T. 3/16/16, pg. 34). Because Guardian did not rebut the statutory presumption that she was the perpetrator, the court's finding that Guardian was the perpetrator was proper.

The court heard an affirmative case that Guardian *was* the perpetrator by omission. As the person responsible for Child's welfare, Guardian had an affirmative duty to keep Child safe. While in her care, Child was abused. The court heard clear and convincing evidence that Guardian failed to act, and in doing so allowed Child to be abused while in her care. The court's finding that Guardian was the perpetrator was proper and should be affirmed.

**Conclusion:**

For the aforementioned reasons, the court met its statutory burden by clear and convincing evidence to find that Guardian was the perpetrator of child abuse. The court's finding was properly made and should be affirmed.

By the court,

Joseph Fernandes J.