J-A27008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.-A, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 893 EDA 2018 |

Appeal from the Order entered on March 16, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002607-2016,
FID: 51-FN-002489-2016

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 19, 2019**

E.A. ("Mother") appeals from the juvenile court's order entered on March 16, 2018, that (1) deemed Mother a perpetrator of child abuse against her daughter, N.B.-A.; (2) determined that aggravated circumstances existed as to Mother; and (3) relieved Philadelphia Department of Human Services ("DHS") from employing reasonable efforts toward reunification.[1]  We affirm in part and reverse in part.

_____

[1] When the juvenile court entered the aggravated circumstances order that is the genesis of this appeal, it also entered a permanency review order that reiterated the court's finding that Mother perpetrated child abuse.  Mother attached both orders to her notice of appeal and she conflates the two orders in the argument section of her brief.  We address the merits of the aggravated circumstances order, which presented the three juvenile court rulings that Mother challenges on appeal.  To the extent that we would also confront the merits of the permanency review order's superfluous finding that Mother committed child abuse, we would affirm it for reasons identical to those that we explain herein.

The record reveals the following pertinent facts and procedural history. N.B.-A. was born during February 2010. The child came to the attention of the Philadelphia Department of Human Services ("DHS") in November of 2016. At that time, N.B.-A. resided with Mother, Mother's husband ("Stepfather"), the husband's two adult sons, and the maternal grandmother. On November 17, 2016, Mother took N.B.-A. to Children's Hospital of Philadelphia ("CHOP") because N.B.-A. was experiencing vaginal discharge. CHOP treated and released N.B.-A. Further testing revealed that N.B.-A., then six-years-old, tested positive for chlamydia. During the ensuing investigation, Mother and one of the adult stepbrothers tested positive for the disease. Upon receiving the test results, the stepbrother immediately "ran out of the hospital" and fled to the Dominican Republic. N.T., 3/16/18, at 34. Stepfather's test was negative. However, prior to the evidentiary hearing, he followed his son to the Dominican Republic.

On November 18, 2016, DHS received a Child Protective Services report alleging that N.B.-A. was a victim of sexual abuse. Following DHS's investigation, the report was indicated as to both Mother and the stepbrother who tested positive for chlamydia, with Mother identified as a perpetrator by omission.[2] On November 22, 2016, DHS obtained an order of protective

---

[2] The Child Protective Services Law defines an indicated report, in pertinent part, as:

custody and N.B.-A. was placed in foster care. The juvenile court adjudicated N.B.-A. dependent on December 5, 2016.

The court conducted permanency review hearings in June 2017, September 2017, and December 2017. Subsequently, N.B.-A.'s guardian *ad litem* filed a motion for a finding of aggravated circumstances. On March 16, 2018, the court conducted a child abuse and aggravated circumstances hearing. At the hearing, DHS presented the testimony of Sharina Johnson, a DHS investigator, and Maria McColgan, M.D., who treated N.B.-A. and is board-certified in child abuse pediatrics. Mother testified on her own behalf. N.B.-A.'s guardian *ad litem* appeared on N.B.-A.'s behalf, although N.B.-A. was not present at the hearing. As it relates to the issues on appeal, during the hearing, DHS and N.B.-A.'s guardian *ad litem* requested findings of child abuse and aggravated circumstances as to Mother.

On March 16, 2018, the juvenile court entered an aggravated circumstances order that found that Mother committed child abuse, determined that aggravated circumstances existed against Mother, and

---

[a] report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:

(i) Available medical evidence.

(ii) The child protective services investigation.

(iii) An admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a).

- 3 -

concluded that DHS no longer needed to make reasonable efforts to reunify N.B.-A. with Mother.

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The juvenile court filed its Rule 1925(a) opinion on May 21, 2018.

On appeal, Mother presents the following issues for our review:

1.      Did the trial court abuse its discretion when it made a finding of child abuse against Mother when insufficient evidence was introduced to demonstrate that Mother intentionally, knowingly, or recklessly caused or created a likelihood of sexual abuse?

2.      Did the trial court err as a matter of law and abuse its discretion when it made a finding of aggravated circumstances on the basis of an indicated child protective services report, in the absence of clear and convincing evidence that the child was a victim of "physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent" as required under 42 Pa.C.S. § 6302?

3.      Did the trial court err as a matter of law and abuse its discretion when it allowed the DHS investigator to testify to the hearsay statements of the medical staff at the Children's Hospital of Philadelphia over Mother's objection?

4.      Did the trial court err as a matter of law and abuse its discretion when it admitted into evidence the written summary of the child's forensic interview, for which no foundation had been laid and which contained prejudicial hearsay statements, denying Mother her constitutional right to cross-examine any witnesses or evidence against her?

5.      Did the trial court err as a matter of law and abuse its discretion when it relieved DHS of its obligation to provide reasonable efforts towards reunification without conducting a

searching inquiry as to Mother's progress towards reunification or the effect on the child of terminating reunification efforts?

Mother's brief at 3-4.[3]

Our standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

The Child Protective Services Law ("CPSL") defines child abuse, in pertinent part, as follows:

> **(b.1) Child abuse.--**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> . . . .
>
> (4) Causing sexual abuse or exploitation of a child through any act or failure to act.

---

[3] The argument section of Mother's brief combines issues one, three, and four into her first argument. Further, DHS has filed a brief arguing in support of affirmance with respect to the juvenile court's finding that Mother committed child abuse, but DHS asserts that the juvenile court erred in concluding aggravated circumstances existed and that DHS need not make further efforts to reunify N.B.-A. with Mother. DHS's brief at 17-31. N.B.-A.'s guardian *ad litem* filed a letter joining the brief filed by DHS.

. . . .

(6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.

23 Pa.C.S. § 6303(b.1) (4) and (6).

In defining intentionally, knowingly, and recklessly, the CPSL refers to the Crimes Code definitions, in relevant part:

**(b) Kinds of culpability defined.--**

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the

circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302.

In *In the Interest of J.R.W.*, 631 A.2d 1019, 1024 (Pa.Super. 1993), we explained that, pursuant to the doctrine of incorporation, the Juvenile Act's definition of dependent child subsumed the definition of child abuse outlined in the CPSL.[4]  Thus, we stated the two laws "must be applied together in the resolution of child abuse complaints."  *Id*. at 1023.  We reasoned,

> The Legislature intended a detailed and specific definition of abuse to leave no doubt as to the capacity of the trial court, which in this case can only be the Juvenile Court, to make a finding and determination that a child has been abused.  In its capacity as a trial judge, the Juvenile Court judge will look and must look to the above definition of child abuse in a case referred by the child protective service agency to the Court under petition for review of dependency when child abuse has been alleged.

*Id*.

_____

[4]  In this context, a dependent child is defined as one who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S. § 6302(1).

In addition to establishing the pertinent definition of child abuse, the court in **In the Interest of J.R.W.** also stressed that the juvenile court's determination of whether child abuse occurred must be supported by clear and convincing evidence. **Id**.

> [T]he clear and convincing evidence necessary to find dependency, has been imposed by the Legislature as the standard which the Juvenile Court must apply in deciding abuse cases. . . . There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the Act to establish child abuse.

**Id**.; **see also In re L.Z.,** 111 A.3d 1164, 1174 (Pa. 2015).

Moreover, 23 Pa.C.S. § 6381 provides, in part:

> **(d) Prima facie evidence of abuse.--**Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

Mother asserts the juvenile court erred in concluding that she committed child abuse as defined in the CPSL. Mother claims that DHS failed to present evidence that she intentionally, knowingly, or recklessly caused or created a likelihood of sexual abuse or exploitation. Mother's brief at 12. Mother also faults the juvenile court for admitting and relying on hearsay statements about her reaction to the abuse. **Id**. at 16. While Mother acknowledges that N.B.-A. was sexually abused,[5] she contends that DHS failed to present evidence

---

[5] "Here, Mother does not contest the trial court's finding that N.B.[-]A. was the victim of child abuse as defined pursuant to the CPSL." Mother's brief at 13.

that Mother was aware of any such risk, claiming "Mother had no reason to believe that any of her household members would harm N.B.[-]A." *Id*. at 15-16. Further, Mother argues that § 6381 does not apply, because there is an identified perpetrator. These contentions are unpersuasive.

The evidence of record supports the juvenile court's finding that Mother is a perpetrator of child abuse. At the hearing, DHS presented the testimony of Dr. Maria McColgan, a board certified doctor in child abuse pediatrics. N.T., 3/16/18, at 43-44. After CHOP discharged N.B.-A., Dr. McColgan treated N.B.-A. at St. Christopher's Hospital. *Id*. at 55-56. Dr. McColgan testified that chlamydia is transmitted either by sexual contact or at birth. *Id*. at 46. When it is transmitted at birth, the infection resolves by the time the child is two or three at the latest. *Id*. at 48. Since N.B.-A. was nearly seven at the time of her diagnosis, Dr. McColgan was adamant that her infection did not arise from her birth. *Id*. Dr. McColgan concluded N.B.-A. was the victim of sexual abuse. *Id*. at 50, 55. Further, Dr. McColgan testified that the symptoms of chlamydia can include genital discharge, irritation, and pain. *Id*. at 47. Dr. McColgan also identified a risk of pelvic inflammatory disease, although she testified that pelvic inflammatory disease does not typically occur in younger children. *Id*. at 57.

DHS also presented the testimony of Sharina Johnson, an investigator in the DHS sex abuse department. *Id*. at 12. Ms. Johnson testified that she first spoke with Mother the day after N.B.-A. was removed from her home.

*Id*. at 13-14. Mother initially reported to Ms. Johnson that she spoke English and Ms. Johnson observed Mother speaking English fluently. *Id*. at 27. Accordingly, when Ms. Johnson asked Mother whether she needed an interpreter, Mother declined. *Id*. at 27-28.[6]

During the ensuing discussion, Mother appeared relaxed and indifferent to the results of the chlamydia testing. *Id*. at 15. Indeed, Ms. Johnson conducted the investigative interview while Mother was having her hair styled. *Id*. at 22. In this vein, Ms. Johnson recalled that Mother did not believe that N.B.-A.'s positive chlamydia test was a serious matter, and was not visibly upset by the diagnosis. *Id*. Over Mother's objection, Ms. Johnson testified that, as part of her investigation, she interviewed the medical providers at the emergency room, who similarly observed that Mother was relaxed during their conversations, seemingly more concerned about a good place from which to order pizza than her daughter's wellbeing.[7] *Id*. at 23-24. Mother denied any

_____

[6] Mother requested an interpreter when interviewed by the police. N.T., 3/16/18, at 27.

[7] Mother asserts that the juvenile court erred in admitting Ms. Johnson's testimony as well as information from a forensic interview. She contends that this evidence constitutes hearsay and lacked authentication. DHS responds that the testimony was unnecessary for DHS to meet its burden of proof and argues that its admission did not prejudice Mother. DHS brief at 25. While Mother objected to Ms. Johnson's testimony as hearsay, she did not object to DHS admitting a concomitant report that included the observation, "[M]other's affect was completely unconcerned, and she was wondering where she could order pizza." DHS Exhibit 1, at 7. Accordingly, the testimony that Mother challenges is cumulative of information admitted without objection in DHS

- 10 -

knowledge of how N.B.-A. contracted chlamydia, and believed that she might have contracted it at birth. *Id*. at 18-19.

Mother also informed Ms. Johnson that she had researched chlamydia and understood that it was transmitted through sexual contact. *Id*. at 16. Nonetheless, she protested that it was impossible for N.B.-A. to have been sexually abused in the household, and that it was simply a "big misunderstanding." *Id*. at 38-39. Mother explained that she and N.B.-A. slept in the same bed and that the maternal grandmother would either sleep in the same bed or on the couch. *Id*. at 33. When asked whether N.B.-A. were exposed to any other people in the home, she replied no. *Id*. at 16. However, Mother testified paradoxically that she and N.B.-A. resided with Mother's husband and two stepsons. *Id*. Mother indicated that both stepsons shared a bedroom in the home and that her husband slept in a shed behind the kitchen. *Id*. at 17-18. In addition to those potential contacts, Ms. Johnson subsequently received information that N.B.-A. might have been exposed to various people who visited the home to give Mother money for unexplained reasons. *Id*. at 30.

Mother testified that either she, N.B.-A.'s grandmother, or her great-aunt always cared for N.B.-A. *Id*. at 63-64. She denied that N.B.-A. disclosed

---

Exhibit 1. Therefore, any error in the admission of hearsay statements is harmless. ***Schuenemann v. Dreemz, LLC,*** 34 A.3d 94, 99 (Pa.Super. 2011) ("[Evidentiary] rulings must be shown to have been not only erroneous but also harmful to the complaining part[y].").

any abuse to her. *Id*. at 64. However, her testimony suggests that, at a subsequent point in the investigation, N.B.-A. leveled allegations of abuse against both Stepfather and the stepbrother who fled the country. *Id*. at 66-67. When questioned as to whether she believed her daughter's later allegations, Mother asserted, if "she says that that's what happened, that's what happened." *Id*. at 64. Nevertheless, despite these supportive sentiments, Mother failed to act on her daughter's allegations or attempted to protect her from abuse. She acknowledged that she did not tell the medical providers that Stepfather or his sons lived in the home. Her rationale for failing to immediately disclose this vital information was "[b]ecause, honestly, I didn't know what was going on and I didn't want to involve . . . anybody, like dad or [N.B.-A.'s] brother in something involved with the -- the child." *Id*. at 62. Even at this juncture, she persists that her failure to disclose the presence of Stepfather and his sons in the home was not an effort to protect them. *Id*. Mother testified that she is no longer married to Stepfather and that she has no relationship with either him or his sons. *Id*. at 62-63. She further denied that Stepfather ever provided care for N.B.-A. *Id*. at 64. As it relates to the peculiar visitors that would frequent the home, Mother explained that people came to her house to pay her money for lottery tickets that her uncle sold. *Id*. at 65.

Based on the foregoing testimony adduced at the hearing, we conclude that the juvenile court did not abuse its discretion in concluding that Mother

was a perpetrator of child abuse regardless of the fact that her stepson had been identified as the actual perpetrator of the sexual abuse. It is undisputed that N.B.-A. was assaulted sexually. Mother acknowledged that she was N.B.-A.'s primary caregiver, and denied that either Stepfather or his sons cared for N.B.-A. While Mother disclaimed any knowledge that N.B.-A. suffered sexual abuse, the juvenile court determined that she lacked credibility. Juvenile Court Opinion, 5/21/18, at 5. Indeed, Mother's own testimony establishes that when she first learned that six-year-old N.B.- A. contracted chlamydia, she passed it off as a birth-related malady and was untruthful about whether any males lived in her house. In sum, Mother was indifferent to the fact that her daughter contracted a sexually transmitted disease, and she chose to disregard the obvious indicia of abuse.

The totality of this evidence adduced by DHS supports the juvenile court's conclusion that Mother was a perpetrator of child abuse. In addition to the evidence that established that Mother's inattentiveness to her daughter around the adult stepbrother knowingly or recklessly created a likelihood of sexual abuse, the certified record demonstrates that N.B.-A. suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of Mother. Hence, through the foregoing evidence of record, DHS established a *prima facie* case pursuant to 23 Pa.C.S. § 6381, that Mother was a perpetrator of child abuse, and Mother failed to

rebut that presumption of abuse. Accordingly, we do not disturb the juvenile court's finding of child abuse as perpetrated by Mother.[8]

Mother's second and third issues, which we consider together, present a challenge to the juvenile court's finding of aggravated circumstances, as well as the court's conclusion that DHS did not need to make further efforts to reunify N.B.-A. with Mother. The framework for the court's analysis is well settled. If the juvenile court determines that a child is dependent and aggravated circumstances have been alleged by either the county agency or by the child's attorney, the court must also determine whether, by clear and convincing evidence, aggravated circumstances exist. 42 Pa.C.S. § 6341(c.1).[9]

---

[8] While the Juvenile Court did not specifically invoke § 6381(d), this Court can affirm the trial court on any basis supported by the certified record. ***See In re Adoption of Z.S.H.G.***, 34 A.3d 1283, 1288 (Pa.Super. 2011) ("we may affirm the orphans' court on any basis supported by the certified record".).

[9] Specifically, § 6341(c.1) provides:

> **Aggravated circumstances.--**If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

The Juvenile Act defines "aggravated circumstances," in relevant part, as follows.

"**Aggravated circumstances**." Any of the following circumstances:

. . . .

(2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

. . . .

42 Pa.C.S. § 6302. Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id*. Sexual violence is "[r]ape, indecent contact as defined in 18 Pa.C.S. § 3101 (relating to definitions), incest or using, causing, permitting, persuading or coercing the child to engage in a prohibited sexual act as defined in 18 Pa.C.S. § 6312(a)[10] (relating to sexual abuse of children) or a simulation of a prohibited sexual act for the purpose of photographing, videotaping, depicting on computer or filming involving the child." *Id*. Aggravated physical neglect is "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id*.

---

[10] Effective September 14, 2009, the General Assembly deleted subparagraph (a) from the statute and transferred the definition of prohibited sexual act to 18 Pa.C.S. § 6312(g).

If the juvenile court determines that aggravated circumstances exist, it "shall determine whether or not reasonable efforts . . . to preserve and reunify the family shall be made or continue to be made[.]" 42 Pa.C.S. § 6341(c.1). A court may end reasonable efforts at its discretion. *See In re L.V.*, 127 A.3d 831, 839 (Pa.Super. 2015) (citing *In re A.H.*, 763 A.2d 873, 878 (Pa.Super. 2000)).

Our review of the certified record confirms that the juvenile court erred in concluding that DHS established aggravated circumstances as to Mother by clear and convincing evidence. In fact, DHS admits that it presented no evidence that Mother was an actual perpetrator of physical abuse or sexual violence, a view that the guardian *ad litem* endorses. Moreover, we observe that the juvenile court's finding of Mother's accountability for purposes of the CPSL is not tantamount to clear and convincing evidence that she actually committed sexual violence, which the Juvenile Act defines as tantamount to a criminal act, *i.e.*, "[r]ape, indecent contact . . ., incest or using, causing, permitting, persuading or coercing the child to engage in a prohibited sexual act[.]" 42 Pa.C.S. § 6302. The CPSL is preventative rather than criminal. *See Interest of L.J.B.*, 2018 WL 6816576, *1, (OAJC) (stating non-criminal, protective purposes of CPSL, including statewide database identifying perpetrators of abuse).

Furthermore, although the sexual abuse that N.B.-A. endured was unquestionably traumatic, the evidence does not reveal that it caused serious

bodily injury. Indeed, neither Dr. McColgan, nor any other witness, testified that N.B.-A.'s functioning was seriously impaired. Likewise, while Dr. McColgan testified that N.B.- A. contracted chlamydia as a result of the sexual abuse, her testimony was insufficient to establish that the child suffered from a life-threatening physical condition as contemplated by the definition of "aggravated physical neglect." **See** 42 Pa.C.S. § 6302. As noted, the parties that originally petitioned for a finding of aggravated circumstances now concede that the certified record does not sustain the juvenile court's determination. Accordingly, for all of the foregoing reasons, we reverse the portion of the March 16, 2018 order finding that aggravated circumstances existed pursuant to § 6303.

Finally, since the juvenile court grounded its concomitant determination under § 6341(c.1), that DHS should discontinue reasonable efforts toward reunifying N.B.-A. with Mother, on the unsound finding the aggravated circumstances existed, we also reverse that determination.

In sum, we sustain the juvenile court's findings of child abuse perpetrated by Mother, but we reverse the juvenile court's finding of aggravated circumstances and its attendant determination that no reasonable efforts should be extended by DHS in reunifying N.B.-A. with Mother.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/19