631 A.2d 1019

**In the Interest of J.R.W.,**

**Appeal of V.F., Natural Mother.**

**In the Interest of J.R.W.,**

**Appeal of A.W., Natural Father.**

Superior Court of Pennsylvania.

Argued June 24, 1993.

Filed Sept. 21, 1993.

to testify to the lab's approval and the adequacy of its methods, procedures, equipment and personnel.

598

Andrew C. Sheely, Public Defender, Shiremanstown, for V.F.

Bruce J. Warshawsky, Harrisburg, for A.W.

Michael A. Scherer, Carlisle, for appellee.

Ruby D. Weeks, Carlisle, for Cumberland County Children and Youth Services, participating party.

600

Before ROWLEY, President Judge, and TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

This is an appeal by parents, V.F. and A.W., from the Order of August 20, 1992, adjudicating the child, J.R.W., a dependent child, issuing a finding of abuse naming either or both parents as perpetrators of such abuse, and awarding care and custody of the child to Cumberland County Children and Youth Services (CYS) for placement in a foster home.

A petition was filed by CYS on or about June 24, 1992, alleging that two-month old J.R.W. was dependent and abused. An emergency shelter hearing was held by the Honorable George E. Hoffer on June 25, 1992, and an Order was entered finding, by clear and convincing evidence, that the child was without proper parental care and control and, therefore, dependent.

A full hearing was held on July 14 and 16, 1992. Testimony was given by a neonatologist, Dr. Blutstein, whose exam revealed bruises on J.R.W.'s head and scratches on her face. A spinal tap indicated blood inside her central nervous system, and a CAT scan revealed a serious, life-threatening problem to the left side of her brain. Testimony was also given by Dr. Austin, a board-certified radiologist. After examining J.R.W.'s radiograph, Dr. Austin discovered multiple rib fractures and swelling in the left side of the brain. A third doctor, Dr. Eggli, a board-certified radiologist and assistant professor of radiology and pediatrics, also examined J.R.W.'s x-rays, discovering approximately seventeen fractures in the rib cage and one in the leg, which were in various stages of healing. Her testimony also revealed that J.R.W. had two separate, severe head injuries which occurred on different dates.

A fourth doctor, Dr. Lucking, director of pediatrics and a board-certified member of the Hershey Medical Center staff, detailed J.R.W.'s physical condition as currently undergoing seizures and requiring ventilator support. Also, her brain was swollen and hemorrhaging under her skull.

Further testimony by family members and social workers revealed that the parents provided various, inconsistent reasons for the injuries to J.R.W. The trial court found these stories to be inconsistent with the evidence and medical testimony presented at the hearings.

The trial court determined that J.R.W. was unquestionably an abused child. The testimony and evidence presented indicated J.R.W. had suffered life-threatening injuries while in the care and custody of her parents. The medical evidence established that J.R.W.'s injuries were consistent with child abuse and that she could be classified as a "shaken baby." Furthermore, although the trial court was unable to determine whether one or both of JRW's parents were the perpetrators of the abuse, it found that the life-threatening injuries were sustained while in her parents' care. As such, it found by clear and convincing evidence that J.R.W. was without proper parental care and control and continued the previous Order of June 25, 1992. After the submission of briefs, the trial court issued the Order from which this appeal is taken.

While appellants, A.W. and V.F., do not contest the finding of dependency or the placement of their child out of the home, they appeal the trial court's finding holding them responsible for the abuse of their daughter. Moreover, in light of the fact that the parents stipulated the child is dependent, they have waived any right to contest the dependency finding before this Court. Appellants present the following issues for our consideration.[1] Initially, appellants argue the Child Protective Services Law, 23 Pa.C.S. § 6301 et seq. ("the Law"), does not provide a means to adjudicate abuse and it is inappropriate to invoke the Juvenile Act, 42 Pa.C.S. § 6301 et seq. ("the Act"), to make such an adjudication because the Act is geared entirely to the reuniting of the family and may not be a basis upon which the finding of abuse by a parent can be made. More simply stated, they contest the ability of the trial court to issue a finding of abuse which names an individual as a perpetrator.

1. Although appellants have filed separate appeals, their claims are virtually identical and will be discussed simultaneously.

In the alternative, they argue that if the Act affords the Court of Common Pleas jurisdiction to make a finding of abuse, then this may not be established on a prima facie basis but must be established by clear and convincing evidence. The appellants argue there was not clear and convincing evidence that one or the other of the parents caused the serious injuries to the child and, therefore, an abuse finding was not appropriate under the law. The court's finding that the parents were the abusers, therefore, could not establish the basis for a "founded" report of child abuse. They would have this Court find that the Law, and specifically section 6381(d), **Prima facie evidence of abuse,** which establishes that abuse may be proven by a standard of prima facie evidence, is not applicable to a finding of abuse under the Act, which requires clear and convincing evidence.

Finally, assuming the Act afforded jurisdiction to make such a finding, the parents allege the trial court abused its discretion by refusing to order independent medical examinations of the child at their request. They allege there were significant questions raised about the source of the injuries as evidenced by the sometimes contradictory statements made by the four CYS experts.

■ Dealing with these issues in sequence we turn first to the jurisdiction of the Juvenile Court to make a finding of child abuse. Undoubtedly the purpose of the Child Protective Services Law is to bring about quick and effective reporting of suspected child abuse so as to serve as a means for providing protective services competently and to prevent further abuse of the children while providing rehabilitative services for them and the parents. 23 Pa.C.S. § 6302(b). To the degree possible, the Law also is geared to the stabilization of the family where appropriate. The Law does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child.

■ The Act, however, is a procedural act which establishes jurisdiction in the courts to legally intervene and make findings of dependency which, in the context of this case, also includes child abuse. While the primary goal of the Act is to preserve and unite the family, it goes far beyond that opening statement of purpose. 42 Pa.C.S. § 6301(b)(1). The Act also requires the court to remove children from the family environment when necessary for their welfare or in the interest of public safety. In keeping with its purpose, the Act provides a complete procedural vehicle by which children are taken into custody, investigations are made, petitions are filed, hearings are held and remedial work is done to aide the family, to protect the child and, where necessary, to place the child out of the reach of abusive and neglecting parents. The Law and the Act must be read in pari materia.

The Law was created primarily for reporting suspected child abuse, providing the means for doing so and establishing the persons responsible for reporting the abuse under Subchapter (B), **Reporting Suspected Child Abuse.** 23 Pa.C.S. §§ 6311–6319. Subchapter (C), **Powers and Duties of Department,** provides for the powers and duties of the Department of Welfare. 23 Pa.C.S. §§ 6331–6349. These sections provide for the state-wide network which was required to be established by the Department of Welfare to assure the proper reporting, recording, maintaining of reports, protecting confidentiality of the reports, preparing studies from the data received and assuring that the county agencies perform their function under the Law. Subchapter (D), **Organization and Responsibilities of Child Protective Service,** provides for the organization and responsibilities of the child protective service agencies, which are the Children and Youth Services of the various counties. Sections 6361 through 6372 provide for the organization of the protective service programs in the local communities and the actual hands-on operation of the services required by the Law. Subchapter (E), **Miscellaneous Provisions,** consisting of sections 6381 through 6384, provides for **Evidence in court proceedings, Guardian[s] ad litem, Education and training** and **Legislative oversight.**

■■■■ Out of the very detailed and explicit provisions of the Law, two sections are relevant to this inquiry. The first has to do with the relationship of the Act and the Juvenile Court to the Law and its implementation. The Law at section 6315 provides for **Taking [a] child into protective custody.**

**(a) General rule.**—A child may be taken into protective custody:

(1) As provided by 42 Pa.C.S. § 6324 (relating to taking into custody).

Subsection (a)(1) refers to the custody provision of the Juvenile Act. Subsections (b) and (d) state:

**(b) Duration of custody.**—No child may be held in protective custody for more than 24 hours unless the appropriate child protective service is immediately notified that the child has been taken into custody and the child protective service obtains an order from a court of competent jurisdiction permitting the child to be held in custody for a longer period. Each court shall insure that a judge is available 24 hours a day, 365 days a year to accept and decide the actions brought by a child protective service under this subsection within the 24–hour period.

.    .    .    .    .

**(d) Detention hearing.**—In no case shall protective custody under this chapter be maintained longer than 72 hours without a detention hearing. If, at the detention hearing, it is determined that protective custody shall be continued, the child protective service shall within 48 hours file a petition with the court under 42 Pa.C.S. Ch. 63.

Thus, by mandate of the Law, the one and only available resource for custody, change of custody or detention of a child who is suspected of being abused under the Law is the Juvenile Court pursuant to the Juvenile Act. This is so fundamentally necessary to the operation of the Law that the allegations of lack of jurisdiction by the Juvenile Court to make findings of child abuse appear to be totally spurious. Since the Act and the Law must be applied together in the resolution of child abuse complaints under the Law, reference

must be made to the definition sections of both the Law and the Act to determine how that finding is interrelated. The Law, pursuant to section 6303, **Definitions,** states:

"**Founded report.**" A report made pursuant to this chapter if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused.

The definition clearly anticipates that the court will make a finding of abuse and that that finding of abuse is pursuant to definitions that are contained in the Law. Since the Act, under pertinent sections which will be reviewed below, permits hearings for adjudication of dependency, which includes abuse, a more specific definition of abuse, which the court will apply in making such a finding, is established by the Law. The Law defines child abuse as follows:

"**Child abuse.**" Serious physical or mental injury which is not explained by the available medical history as being accidental, sexual abuse, sexual exploitation or serious physical neglect of a child under 18 years of age if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent.

*Id.*

The Legislature intended a detailed and specific definition of abuse to leave no doubt as to the capacity of the trial court, which in this case can only be the Juvenile Court, to make a finding and determination that a child has been abused. In its capacity as a trial judge, the Juvenile Court judge will look and must look to the above definition of child abuse in a case referred by the child protective service agency to the Court under petition for review of dependency when child abuse has been alleged.

To further aide the Juvenile Court in making these determinations, the Legislature deemed it wise and necessary to establish a different evidentiary standard for finding child abuse by a parent or person responsible for the child's care,

one in contrast to the overall standard for determining dependency under the Act. Subchapter (E), **Miscellaneous Provisions,** is the second relevant subchapter in the Law which is necessary to the resolution of the issues raised by appellants in this case. Pursuant to 23 P.S. § 6381, **Evidence in court proceedings,** subsection (a), **General rule,** provides: "In addition to the rules of evidence provided under 42 Pa.C.S. Ch. 63 (relating to juvenile matters), the rules of evidence in this section shall govern in child abuse proceedings in court." Subsection (b) provides for reports of unavailable persons to overcome hearsay exceptions. Except for privileged communications between a lawyer and a client and between a minister and a penitent, subsection (c) provides a waiver of the privilege of confidential communications between husbands and wives and between professional persons, including, but not limited to, physicians, psychologists and counselors and their patients or clients so that the full extent of the abuse of children who cannot speak for themselves can be divulged in court without hearsay objection. Subsection (d) provides for an attenuated standard of making a legal determination as to the abuser in child abuse cases.

(d) **Prima facie evidence of abuse.**—Evidence that a child has suffered serious physical injury, sexual abuse or serious physical neglect of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

This lessened standard of establishing abuse by the caretakers, coupled with the clear and convincing evidence necessary to find dependency, has been imposed by the Legislature as the standard which the Juvenile Court must apply in deciding abuse cases. Prima facie evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case. There is no conflict, constitutional or otherwise,

with the clear and convincing evidence standard imposed by the Act to establish child abuse. The Legislature has determined that the likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that prima facie evidence the custodian has caused the injury, either by acts or omissions, is all that is required. We find no defect in this reasoning. Such a standard provides maximum protection for the child victim or other children in the community who might be subject to similar abuse if the alleged abuser was not identified and permitted free access to the victim or other vulnerable children. It is not equivalent to a finding of guilt in a criminal proceeding which could result in deprivation of freedom. Thus the legislature has balanced the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt.

While the court, in its proceeding, must determine by clear and convincing evidence that the child was physically abused, its finding as to the abusers need only be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers.

The two major sections of the Law referred to above are controlling in this case. It is unquestioned that the Juvenile Court, pursuant to the Law, applied the proper standards for taking into custody, for having a hearing and for acquiring jurisdiction, and, additionally, applied the standard of evidence and proof required to establish both child abuse and identity of the abusers.

█ The Juvenile Act provides:

§ 6324. **Taking into custody**

A child may be taken into custody:

(1) Pursuant to an order of the court under this chapter. . . .

Such an Order is provided when the child welfare agency files a petition with the court requesting a hearing on the abuse of the child under the Law. Section 6335, **Release or holding of hearing,** determines whether the child can or cannot be

released upon a hearing within ten days following the filing of a petition. Section 6302 of the Act, **Definitions,** defines "dependent child" in relevant part as follows:

"**Dependent child.**" A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals[.]

By the doctrine of incorporation, as mandated by the Legislature, the definition of child abuse (the Law, 23 Pa.C.S. § 6303) quoted above is incorporated into this definition of a dependent child. The Act provides:

§ **6341. Adjudication**

(a) **General rule.**—After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child.... If the court finds that the child is not a dependent child or that the allegations of delinquency have not been established it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.

.      .      .      .      .      .

(c) **Finding of dependency.**—If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

■ Thus, it is clear that under the Act, while incorporating the later additional legislation relating to child abuse provided under the Law, the Juvenile Court has the jurisdiction and the right to adjudicate child abuse and when such an adjudication is made pursuant to the Law, a "founded report" may be lodged with the Department of Welfare determining that the parents are the persons responsible for the abuse.

In summation, the Juvenile Court is the proper and only judicial body which has the capacity to make a determination

that a child is abused and to affect a disposition of that child pursuant to the Act in conjunction with the Law. In doing so, that Court also has been given the right, pursuant to the Law, to establish on prima facie evidence whom the likely abusers would be under the circumstances. Thus, the standard of proof applied in determining abuse of the child for purposes of disposing of that finding in relation to placement of the child or supervision of the child is by clear and convincing evidence. By specific act of legislation, a determination as to who the abuser most likely would be is only required to be established by prima facie evidence. It is unquestioned in this case that the child was abused by clear and convincing evidence. Moreover, it is also unquestioned in this case that the prima facie evidence established the primary custodians during the time of the abuse were the parents, the appellants herein. The trial court did not err in making the finding of child abuse and naming the parents as the abusers.

■ The final issue in this case is whether the parents should have been afforded independent medical experts to evaluate the child. The court acted properly in denying this request because the several experts testified *without qualification* that this child had been seriously abused. There were some slight differences as to whether the child was shaken or squeezed and the exact manner by which the very serious injuries occurred. *There was no question by any of the experts that this child had suffered serious trauma at the hands of the caretakers.* Thus, an independent evaluation would have served no purpose but to add a fourth or fifth opinion as to how, precisely, the injuries were caused. Additional medical evaluation would not have changed the result that the injuries were caused by trauma from an external source, that source most likely being the parents.

Order affirmed.