J-A13011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: B.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.A., MOTHER | |
| | No. 2094 EDA 2021 |

Appeal from the Order Entered October 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001046-2016

BEFORE:  OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 12, 2022**

Appellant, S.A., ("Mother") appeals from the October 1, 2021 order that, *inter alia*, found Mother to be a perpetrator of child abuse against her biological child, B.R., born March 2005, ("B.R.") and deemed a related child welfare information system ("CWIS") report (number 8926312) to be "founded."  We affirm.

The trial court summarized the procedural and factual history as follows:

[B.R.] was adjudicated dependent on December 5, 2017.  On September 29, 2020, the Philadelphia Department of Human Services ("DHS") received a child protective services ("CPS") report alleging [that,] earlier in the day[,] Mother attacked [B.R.]. As a result, [B.R.] had multiple abrasions and contusions on her face and right arm.  Mother punched [B.R.], pulled her hair[,] and hit her with an object, possibly a rock.  [B.R.] was taken to [a hospital,] and Mother was arrested as a result.  Mother was charged with felony aggravated assault, endangering the welfare of a child, and possession of an instrument of crime.  The case was dismissed due to lack of prosecution by the Philadelphia District Attorney's Office.

[On May 27, 2021, DHS filed a motion for [a] finding of child abuse[,] asserting that Mother was a perpetrator of child abuse against B.R. as a result of Mother's actions on September 29, 2020.] On October 1, 2021, the trial court held a child abuse hearing[.] Mother was present at the hearing and represented by counsel. After testimony, the trial court found that Mother was a perpetrator of child abuse against [B.R.]

Trial Court Opinion, 1/20/22, at 2 (extraneous capitalization omitted). The trial court also deemed the CWIS report of alleged child abuse by Mother against B.R. to be founded. Trial Court Order, 10/1/21. This appeal followed.[1]

Mother raises the following issues for our review:

[1.] Whether the trial court erred as a matter of law and abused its discretion when it found that [Mother] was a perpetrator of child abuse against B.R.?

[2.] Whether the trial court erred as a matter of law and abused its discretion when it found that the [CWIS] report of [child] abuse against [Mother] should be converted to a founded report?

Mother's Brief at 3.

Mother's first issue challenges the trial court's finding that Mother was a perpetrator of child abuse, as defined by the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301-6388, against B.R. Mother's Brief at 10-27; *see also* Mother's Rule 1925 Statement, 10/13/21, at ¶1 (stating, "[t]he trial court erred as a matter of law and abused its discretion when it found that [Mother] was a perpetrator of child abuse against B.R.").

---

[1] Both Mother and the trial court complied with Pa.R.A.P. 1925.

In reviewing a trial court order finding a parent or caregiver to be a perpetrator of child abuse, this Court is "required to accept the findings of fact and credibility determinations of the trial court, if they are supported by the record[.]" **Interest of C.B.**, 264 A.3d 761, 770-771 (Pa. Super. 2021), *appeal denied*, 270 A.3d 1098 (Pa. 2022). We are not bound, however, by the trial court's inferences or conclusions of law. **C.B.**, 264 A.3d at 771.

Although dependency proceedings, which include a petition requesting a finding of child abuse, are governed by the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, the Child Protective Services Law "controls determinations regarding findings of child abuse, which the [trial] court must find by clear and convincing evidence." **C.B.**, 264 A.3d at 770. "Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **Id.** (original quotation marks omitted). "The [Juvenile] Act and the [Child Protective Services Law] must be applied together in the resolution of child abuse complaints under the [Child Protective Services Law] and reference must be made to the definition sections of both the [Child Protective Services Law] and the [Juvenile Act] to determine how that finding of child abuse is interrelated."[2] **Id.** (original brackets omitted), *citing* **In Interest of J.R.W.**, 631 A.2d 1019, 1023 (Pa. Super. 1993).

---

[2] The Juvenile Act "is a procedural act which establishes jurisdiction in the courts to legally intervene and make findings of dependency which, [] also

The Child Protective Services Law defines "child abuse," in pertinent part, as follows:

> The term "child abuse" shall mean intentionally, knowingly[,] or recklessly doing any of the following:
>
> > (1) Causing bodily injury to a child through any recent act or failure to act.
> >
> > . . .
> >
> > (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.
> >
> > . . .
> >
> > (8) Engaging in any of the following recent acts:
> >
> > > (i) Kicking, biting, throwing, burning, stabbing[,] or cutting a child in a manner that endangers the child.

23 Pa.C.S.A. § 6303(b.1)(1), (5), and (8)(i).[3]  "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain."  23 Pa.C.S.A. § 6303(a).  For purposes of the Child Protective Services Law, the terms

---

includes child abuse."  **In Interest of J.R.W.**, 631 A.2d 1019, 1022 (Pa. Super. 1993).  The Child Protective Services Law "was created primarily for reporting suspected child abuse, providing the means for doing so and establishing the persons responsible for reporting the abuse[.]" **Id.**  The Child Protective Services Law "does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child." **Id.**

[3] We note that, effective December 31, 2014, "child abuse" may be proven upon a showing that, *inter alia*, a recent act or failure to act caused "bodily injury," and a showing of "serious physical injury" (severe pain or significant impairment of physical functioning) is no longer required.  **Compare**, 23 Pa.C.S.A. § 6303 (effective Dec. 31, 2014) **with** 23 Pa.C.S.A. § 6303 (effective Sept. 2, 2014, to Dec. 30, 2014).

"intentionally," "knowingly," and "recklessly" have the same meanings as set forth in Section 302 of the Crimes Code. *Id.* Section 302 of the Crimes Code defines these terms as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
>> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>>
>> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly with respect to a material element of an offense when:
>
>> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>>
>> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(1-3).

Section 6303(d) of the Child Protective Services Law provides that certain conduct, as set forth in Section 6304 of the Child Protective Services

Law, is excluded from the term "child abuse." 23 Pa.C.S.A. § 6303(d).

Section 6304 states, in pertinent part, as follows:

**§ 6304.  Exclusions from child abuse**

. . .

**(c) Use of force for supervision, control[,] and safety purposes.**--Subject to subsection (d), the use of reasonable force on or against a child by the child's own parent or person responsible for the child's welfare shall not be considered child abuse if any of the following conditions apply:

(1) The use of reasonable force constitutes incidental, minor[,] or reasonable physical contact with the child or other actions that are designed to maintain order and control.

(2) The use of reasonable force is necessary:

(i) to quell a disturbance or remove the child from the scene of a disturbance that threatens physical injury to persons or damage to property;

(ii) to prevent the child from self-inflicted physical harm;

(iii) for self-defense or the defense of another individual; or

(iv) to obtain possession of weapons or other dangerous objects or controlled substances or paraphernalia that are on the child or within the control of the child.

**(d) Rights of parents.**--Nothing in this chapter shall be construed to restrict the generally recognized existing rights of parents to use reasonable force on or against their children for the purposes of supervision, control[,] and discipline of their children. Such reasonable force shall not constitute child abuse.

23 Pa.C.S.A. § 6304(c) and (d).

Here, Mother contends for the first time on appeal that "[t]he contact that she had with [B.R.] was for the purpose of supervision, control, and

- 6 -

discipline" and, as such, did not constitute "child abuse" pursuant to Section 6304(d). Mother's Brief at 10, 15. Mother asserts that "[t]his case involves a mother who used force [to defend] herself from her child[] and to supervise, control, and discipline the child." *Id.* at 15. Such conduct, Mother argues, is "specifically excluded from the definition of child abuse." *Id.* Mother contends that the trial court erred in not considering, or providing an analysis concerning, the exclusion of her conduct towards B.R. from the definition of "child abuse" as contemplated pursuant to Section 6304(d). *Id.*

Pennsylvania Rule of Appellate Procedure 302(a) states that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[O]ur Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity to 'eliminate the possibility that an appellate court will be required to expend time and energy reviewing claims on which no trial [court] ruling has been made.'" *Interest of T.M.*, 239 A.3d 193, 201 (Pa. Super. 2020).

In the case *sub judice*, Mother did not raise her Section 6304(d) claim - that her conduct towards B.R. fell within the parameters of her right as a parent to use a reasonable amount of force for the purpose of supervision, control, and discipline – with the trial court either at the child abuse hearing or in her Rule 1925(b) statement. As such, the trial court could not specifically address, or make relevant findings about, this claim. Accordingly, Mother waived her claim that her conduct and actions towards B.R. did not constitute "child abuse" pursuant to Section 6304(d). *In re M.Z.T.M.W.*, 163 A.3d 462,

466 (Pa. Super. 2017) (stating that, a finding of waiver of issues not included in a Rule 1925(b) statement is mandatory); *see also Interest of N.K.*, 2022 WL 664185 (Pa. Super. Mar. 7, 2022) (unpublished memorandum).[4]

In finding that Mother's conduct rose to the level of child abuse,[5] the trial court stated,

> During the [child abuse] hearing on October 1, 2021, [a] DHS Investigator [] testified that [she] was the DHS investigator assigned to the case. The DHS Investigator testified [that she] learned of an altercation between Mother and [B.R.] on September 29, 202[0,] *via* a CPS report. The CPS report was authenticated by the DHS Investigator and was entered as an exhibit without objection from Mother's counsel. Included with the report were photos of [B.R.'s] injuries [sustained] as a result of the altercation. These photos were also admitted into evidence without objection from Mother's counsel.
>
> The DHS Investigator testified that Mother admitted to [her] that she hit [B.R.] Mother also said she never used a knife against [B.R.] but would have stabbed her if a knife was available. The

---

[4] We note that the parent in *N.K.*, *supra*, was represented by the same counsel that represents Mother in the case *sub judice* and that counsel filed an almost identical Rule 1925(b) statement and appellate brief in the case *sub judice* as was filed in *N.K.*, *supra*. Ultimately, this Court in *N.K.*, *supra*, found, as we do in the case *sub judice*, that the parent waived a claim pursuant to Section 6304(d) for failure to raise such issue before the trial court. *N.K.*, 2022 WL 664185, at *3-*4.

[5] We note that, at the child abuse hearing and in its appellate brief, DHS asserted that Mother's conduct and actions towards B.R. rose to the level of child abuse pursuant to Section 6303(b.1). DHS's Brief, 10-13; *see also* N.T., 10/1/21, at 26-66. Conversely, the guardian *ad litem* advocated that Mother's conduct did not rise to the level of child abuse. N.T., 10/1/21, at 61-62 (stating, "I don't think what we've heard is a mutual fight between Mother and [B.R.] who are relatively equal size. It's unclear [] who threw the first punch but – or the first slap. But[,] I really don't think this meets the legislature['s] intent of child abuse.").

DHS Investigator testified that Mother was prepared to hit [B.R.] more but was disrupted by the presence of neighbors. The DHS Investigator testified that [B.R.,] in an interview [with the DHS Investigator,] said that Mother attempted to throw a rock at her but missed. The [DHS] Investigator also testified that [B.R.] was treated at [a hospital] for injuries sustained during the altercation. These injuries included bumps on the face and head[,] as well as abrasions on the face and arms. During the [child abuse] hearing on October 1, 2021, Mother testified that she hit, slapped, and scratched [B.R.] but did not punch or use a knife or rock in the altercation on September 29, 2021[.] Mother described the altercation as being a family dispute instigated by [B.R.] resulting in [B.R.] being hospitalized and Mother being arrested by the Philadelphia police. The testimony of Mother and the DHS Investigator (all subject to cross[-]examination[] by [Mother's] counsel[)] was enough to determine that [] Mother was the perpetrator of child abuse [against B.R.] Mother attempted to [downplay] the altercation[,] but the testimony of the DHS Investigator clearly demonstrated that the altercation caused [B.R.] serious bodily injury and would have been worse but for the intervention of police and neighbors.

Trial Court Opinion, 1/20/22, at 6-8 (extraneous capitalization omitted).

The record demonstrates that, on September 29, 2020, an altercation ensued between Mother and B.R., concerning B.R.'s relationship with a male individual. N.T., 10/1/21, at 38-39, 50-52; *see also* N.T., 10/1/21, at Exhibit DHS 2. Mother indicated to the DHS Investigator, at the time of the investigation into the allegations of child abuse, that B.R. became disrespectful towards Mother and that Mother slapped B.R. in the face. *Id.* at 38. The DHS Investigator stated that "[o]nce [the slap] happened, [B.R.] and [Mother] began getting physical with each other." *Id.*

At the child abuse hearing, Mother testified that B.R. started to hit Mother first and that Mother's actions were responsive in nature and were for

purposes of defense.[6]  *Id.* at 52.  Mother described the altercation with B.R. as "a family fight."  *Id.* at 53.  The DHS Investigator reported that Mother hit B.R. in the face, with both open-handed slaps and punches, pulled B.R. by the hair, and scratched B.R.  *Id.* at 40.  The DHS Investigator testified that, during the DHS investigation, Mother admitted to causing the injuries to B.R.  *Id.* at 41.  On cross-examination, Mother admitted that she "smacked" or hit B.R. approximately five times, and pulled her hair "[b]ecause she was punching me and kicking me."  *Id.* at 58, 61.  Mother stated that she scratched B.R. because she has "long nails."  *Id.* at 50.

As a result of the altercation, B.R. was transported to a hospital where she was treated for her injuries, and she remained in the hospital overnight because of a possible concussion.  *Id.* at 42.  B.R.'s injuries included several scratches, which were treated with ointment, a bump on her head underneath

_____

[6] Mother's brief argues, based upon this testimony, that Mother used force either to defend herself from B.R., or to supervise, control, and discipline B.R. Mother's Brief at 15.  Mother further maintains that section 6304(d) excludes this conduct from the definition of child abuse.  *Id.* at 15-16.  In an apparent effort to avoid waiver, Mother contends that the definition of child abuse in section 6303(b.1) must yield to the exception found at section 6304(d) since "a parent retains the right to use **reasonable** force for the supervision, control, and discipline of [her] child pursuant to section 6304(d), regardless of any of the provisions of [section] 6303(b.1)."  *Id.* at 18 (emphasis in original).  This argument does not alter our conclusion regarding waiver, as even claims raising statutory construction must be raised and preserved before the trial court.  *T.M.*, 239 A.3d at 201 (stating, this Court "will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated" (emphasis and citation omitted)).

- 10 -

her hairline, and several bruises to her face, as well as complaints of a headache. *Id.* at 43-44; *see also id.* at Exhibit DHS 3.

At the conclusion of the child abuse hearing, the trial court stated,

Well[,] it comes down to a credibility issue. And I find that at the time that this incident happened[,] it was fresh in [B.R.'s] mind. And it was fresh in the [DHS Investigator's] mind. And it was fresh in the police[ officer's] mind because [Mother was arrested] for assault.

. . .

This is a 15 year-old [child.] Mother has a parental duty to protect the child. That doesn't include slapping her around, scratching her, [or] pulling her hair.

So[,] this is a finding of child abuse. And I'm basing that on the credibility of the [DHS Investigator] along with the credibility of [Mother,] which I find she's trying to downplay this incident that led to the child having to go to the hospital and [Mother] getting arrested.

*Id.* at 62-63.

After review, we find that the record supports the trial court's credibility determinations and findings of fact and, thus, conclude that the trial court did not abuse its discretion or err as a matter of law in finding that Mother's actions constituted child abuse against B.R. It is within the purview of the trial court, who sits as the trier-of-fact in these types of cases, to determine whether there is clear and convincing evidence of child abuse. This Court is not in a position to reweigh the evidence and will affirm the trial court's decision so long as it is not manifestly unreasonable. While the trial court in the case *sub judice* found that Mother's actions against B.R. rose to the level

of serious bodily injury, a finding of child abuse, as discussed *supra*, requires only bodily injury, which is impairment of physical condition or substantial pain. 23 Pa.C.S.A. § 6303(a) and (b.1)(1). Clear and convincing evidence was presented that Mother knowingly, intentionally, and recklessly caused physical injury to B.R. in the form of several scratches, bruising on B.R.'s face and neck, a bump on her head, and a possible concussion. Substantial pain may be inferred from the circumstances surrounding the physical force Mother used against B.R. during the altercation, including the pulling of her hair, that caused B.R. to sustain scratches requiring medical treatment, bumps and bruises on B.R.'s face, head, and neck, and slaps and blows to B.R.'s face and head to such an extent that hospital physicians felt the need to observe B.R. overnight for a possible concussion. **See Commonwealth v. Duck**, 171 A.3d 830, 836 (Pa. Super. 2017) (stating, "[s]ubstantial pain may be inferred from the circumstances surrounding the physical force used"); **see also Commonwealth v. Jorgenson**, 492 A.2d 2, 6 (Pa. Super. 1985) (stating that, striking a victim twice in the face causes substantial pain for purpose of bodily injury), *reversed on other grounds*, 517 A.2d 1287 (Pa. 1986). Therefore, we discern no abuse of discretion or error of law by the trial court in finding that Mother's actions towards B.R. caused bodily injury and, thus, amounted to child abuse.[7]

_____

[7] To the extent that Mother raised a Section 6304(d) claim during her testimony at the child abuse hearing (N.T., 10/1/21, at 52), the trial court

In light of our finding that Mother's first issue does not merit relief, it follows that her second issue, in which she asserts that the trial court erred in converting the CWIS report of child abuse to a "founded report," does not merit relief. A child abuse report involving a perpetrator that is made pursuant to the Child Protective Services Law is a "founded report" when, *inter alia*, "[t]here has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse." 23 Pa.C.S.A. § 6303(a); **see also J.F. v. Dept. of Human Servs.**, 245 A.3d 658, 660 (Pa. 2021).

Here, the trial court found that B.R., who was the subject of the child abuse report, was, in fact, abused by Mother. Therefore, the trial court properly ordered that the child abuse report (CWIS report number 8926312)

_____

found Mother's testimony to be self-serving and not credible. Although evidence existed that demonstrated both Mother and B.R. engaged in an altercation, as the trial court noted, Mother has a parental duty to protect B.R. *Id.* at 63. Mother has a right to use only reasonable force to supervise, control, or discipline B.R. or to defend herself. Here, Mother's actions of scratching, slapping, and hitting B.R., as well as pulling her hair, resulted in B.R. sustaining injuries requiring medical treatment, as well as incurring several bumps and bruises on her head, face, and neck areas. We concur with the trial court that Mother's rights as a parent do not include "slapping [B.R.] around, scratching her, [or] pulling her hair." *Id.*

- 13 -

be amended from "indicated"[8] to "founded." Consequently, Mother's second issue is without merit.

Order affirmed.

Judge Dubow did not participate in the consideration or decision of this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2022

---

[8] "An 'indicated' report is one wherein the determination relies on DHS's or the county agency's own assessment that their investigation revealed 'substantial evidence of the alleged abuse by a perpetrator exists based on' available medical records, the child protective services investigation, or an 'admission of the acts of abuse by the perpetrator.'" *J.F.*, 245 A.3d at 660, *citing* 23 Pa.C.S.A. § 6303(a).