J-S44002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1038 EDA 2023 |

Appeal from the Order Entered March 24, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001330-2021

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 8, 2024**

F.P. ("Father") appeals from the permanency review order regarding his

dependent daughter, S.P. ("Child"), born in January 2006, entered pursuant

to the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6375. In the order, the trial court

found Father to be a perpetrator of child abuse against Child pursuant to

subsection 6303(b.1)(3), (4), and (6) of the Child Protective Services Law, 23

Pa.C.S.A. §§ 6301–6387 ("CPSL").[1] We affirm.

The record reveals the following facts and procedural history. On

December 30, 2021, the Philadelphia Department of Human Services ("DHS")

filed a dependency petition alleging that Child is a dependent child and the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Y.P. ("Mother") did not file a notice of appeal and she is not a party to this
appeal.

victim of child abuse perpetrated by her adult half-brother, B.P., Father, and Mother. Specifically, DHS alleged that Child had been sexually abused by B.P on several occasions, and that Child disclosed the sexual abuse to her parents but "they tried to hide the abuse and would not allow [her] to come forward with the allegations." Dependency Petition, 12/30/21, at ¶ 5(b). DHS further averred that it received a Child Protective Services ("CPS") report with these allegations on November 2, 2021, along with the allegation that Child has a history of suicidal ideations and was being taken to Children's Crisis Response Center ("CRC") for admission. *See id.*

The trial court held a bifurcated hearing which commenced on November 28, 2022. The parties stipulated to Child being adjudicated dependent and the court issued the order of adjudication and disposition that same day. *See* N.T., 11/28/22, at 5-6. Further, DHS introduced at the hearing, and the court admitted and viewed in open court, the video of Child's forensic interview conducted by the Philadelphia Children's Alliance ("PCA") on December 8,

2021.[2, 3] *See id.* at 6-10. The trial court made the following factual findings based on Child's PCA interview:

> Child reported that her brother, B.P., began sexually assaulting her when she was 5 years old and that the sexual assaults occurred on multiple occasions. She stated that B.P. would have her close her eyes and put something "big" in her mouth for several minutes. She stated that B.P. told her that he put "the parts between your legs" in her mouth. Child also reported that when she was 11 years old, B.P. touched her "butt," "crotch," and "vagina" on multiple occasions. She also reported that he performed oral sex on her. Child told investigator that she reported the sexual assaults to Mother and that Mother instructed her not to tell Father because what happened was "too nasty." She informed the investigator that Father later talked to her about what B.P. had done and Father isolated her and "swore (her) to secrecy."

---

[2] According to Cheryl Barr, the DHS investigator, a PCA interview "is where the child sits down with someone who is clinically trained to ask [him or her] specific questions in regard to the abuse. They go very much into detail as to where they were, how they were sitting, if they were dressed. . . . [T]hey just go a lot into detail in regard to the exact abuse." N.T., 3/24/23, at 19. Ms. Barr stated that PCA interviews are a standard part of an investigation into certain allegations in a CPS report. *See id.*

[3] On March 15, 2022, DHS filed a motion to admit into evidence at the hearing Child's PCA interview pursuant to 42 Pa.C.S.A. § 5985.1 (Admissibility of certain statements). The trial court held a hearing on June 30, 2022, during which counsel for neither Father nor Mother objected to DHS's request. *See* N.T., 6/30/22, at 11. Following the court's *in camera* interview of Child pursuant to Section 5985.1(a)(1)(i), it determined that Child's PCA interview is relevant and has sufficient indicia of reliability. *Id.* at 11-12. Pursuant to Section 5985.1(a)(1)(ii), the court found Child is unavailable as a witness for the dependency hearing. *Id.* at 12. Thus, the court granted DHS's request to admit Child's PCA forensic interview during the dependency hearing.

Trial Court Opinion, 7/18/23, at 2 (cleaned up).[4]

The hearing continued on March 24, 2023, with respect to whether Child is a victim of "child abuse."[5] DHS presented the testimony of its investigator, Ms. Barr. Father and Mother testified on their own behalf.

The record confirms the trial court's recitation of Ms. Barr's testimony as follows.

> Ms. Barr testified that she met with Child [at the CRC] on November 3, 2021. Child told Ms. Barr that she had been abused and that her parents did not believe her or do anything about the abuse. She also stated that she wanted to kill herself. Child was fifteen years old at that time. Child informed Ms. Barr that her brother, B.P., was the perpetrator of sexual abuse against her and that he resided in the family home at that time. (N.T., 3/24/23, at 9-12).
>
> Ms. Barr testified that she met with B.P., Mother, and Father. B.P. denied the allegations. Mother did not believe that B.P. sexually abused and assaulted Child as alleged and denied that Child had brought these allegations to her attention. Ms. Barr testified that Father also did not believe the allegations were true. Both told Ms. Barr that they believed Child made up the sexual assault allegations and that she reported to the CRC in a suicidal state because Mother and Father limited her social media access. (**Id.** at 34-36).

---

[4] The court found Child's forensic interview was conducted by Samantha Kujolik, LSW, from the PCA and "witnessed by a Philadelphia police detective from the Special Victims Unit, and Cheryl Barr, who is employed as an investigator at DHS. Ms. Barr and the detective were not present in the room with Child and Ms. Kujolik, but rather watched the interview in a separate room on closed circuit television." Trial Court Opinion, 7/18/23, at 2 (cleaned up).

[5] The court also heard evidence regarding Child's permanency plan pursuant to 42 Pa.C.S.A. § 6351(f). **See** N.T., 3/24/23, at 59-67.

Ms. Barr concluded her investigation in December of 2021 and the investigation was indicated. She found that there was evidence that supported the allegations and that Child's statements throughout the investigation were consistent with the allegations. Specifically, B.P. was indicated for indecent assault and Mother and Father were indicated for perpetrator by omission. (*Id.* at 14-18).

Trial Court Opinion, 7/18/23, at 3 (cleaned up).

By permanency review order dated and entered on March 24, 2023, the court found Father and Mother to be perpetrators of child abuse through their failures to act pursuant to subsection 6303(b.1)(3), (4), and (6) of the CPSL. The court found B.P. to be a perpetrator of child abuse against Child pursuant to subsection 6303(b.1)(4).[6]

Father timely filed a notice of appeal and a concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued an opinion pursuant to Rule 1925(a) on July 18, 2023.

On appeal, Father questions whether the trial court erred as a matter of law and abused its discretion when it found that he was a perpetrator of child abuse against Child for failing to act. *See* Father's Brief at 3.

Our standard of review in child dependency cases is as follows:

Our scope of review in child dependency cases is limited in a fundamental manner by our inability to nullify the fact-finding of the trial court. We accord great weight to the hearing judge's findings of fact because the judge is in the best position to observe and rule upon the credibility of the witnesses. Given this unique

---

[6] The record reveals that B.P. was charged criminally for his alleged sexual abuse of Child. *See* N.T., 3/24/23, at 37. At the time of the dependency hearing, B.P.'s criminal trial was pending. *Id.* at 37-38.

posture, we will not overrule the findings of the trial court if they are supported by competent evidence and our well-settled standard of review "requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the trial court's inferences or conclusions of law."

*In the Interest of R.C.-G.*, 292 A.3d 582, 587 (Pa. Super. 2022) (citation omitted).

Dependency proceedings are governed by the Juvenile Act, but the CPSL pertains to a court's finding of child abuse. *See In the Interest of X.P.*, 248 A.3d 1274, 1276 (Pa. Super. 2021). The standard of proof for a finding of child abuse is clear and convincing evidence. *See In the Interest of N.B.-A.*, 224 A.3d at 668. "Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court has explained:

"[Although] dependency proceedings are governed by the Juvenile Act (Act), . . . the CPSL . . . controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence." *In re L.V.*, 209 A.3d 399, 417 (Pa. Super. 2019) (citations omitted); *see also In the Interest of X.P.*, 248 A.3d 1274, 1276 (Pa. Super. 2021) (same). The CPSL "does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child." *In the Interest of J.R.W.*, 631 A.2d 1019, 1022 (Pa. Super. 1993). "[T]he Act and the [CPSL] must be applied together in the resolution of child abuse complaints under the [CPSL and] reference must be made to the definition sections of both the Law

- 6 -

and the [CPSL] to determine how that finding [of child abuse] is interrelated." *Id.* at 1023.

"'As part of [a] dependency adjudication, a court may find a parent [or caregiver] to be the perpetrator of child abuse[]' as defined by the . . . CPSL." *In re S.L.*, 202 A.3d 723, 728 (Pa. Super. 2019) (citation and quotations omitted). Section 6381 of the CPSL, which governs evidence in court proceedings, states that "[i]n addition to the rules of evidence . . . relating to juvenile matters, the rules of evidence in this section **shall govern** in child abuse proceedings in court[.]" 23 Pa.C.S. § 6381(a) (emphasis added). . . .

In *In the Interest of N.B.-A.*, 224 A.3d 661 (Pa. 2020), the Pennsylvania Supreme Court recently reiterated the appropriate standard of proof for a finding of child abuse:

> The requisite standard of proof for a finding of child abuse pursuant to [s]ection 6303(b.1) of the CPSL is clear and convincing evidence. [A] petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S. § 6341(c)[]. Clear and convincing evidence is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." . . .

> *Id.* at 668 (citations omitted).

*In the Interest of C.B.*, 264 A.3d 761, 770-771 (Pa. Super. 2021) (*en banc*)

(footnotes omitted) (emphasis in original).

The CPSL defines "child abuse," in relevant part, as follows:

**(b.1) Child abuse**. -- The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

. . .

> **(3)** Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts **or failures to act**.

- 7 -

**(4)** Causing sexual abuse or exploitation of a child through any act **or failure to act**.

. . .

**(6)** Creating a likelihood of sexual abuse or exploitation of a child through any recent act **or failure to act**.

. . .

23 Pa.C.S.A. § 6303(b.1)(3), (4), (6) (emphasis added).[7]

On appeal, Father argues that the evidence was insufficient to establish that he "knew or should have known" that B.P. sexually abused Child and "consciously and unjustifiably" disregarded it. Father's Brief at 12 (citing ***In the Interest of N.B.-A.***, ***supra***). Specifically, Father baldly asserts that Child's PCA interview constituted hearsay and, further, that Child's description of the sexual abuse by B.P. "was extremely minimal." ***Id.*** at 13.

To the extent that Father claims the court erred or abused its discretion in admitting into evidence Child's PCA interview pursuant to 42 Pa.C.S.A.

_____

[7] "Serious mental injury" is defined as

A psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that:

**(1)** renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that the child's life or safety is threatened; or

**(2)** seriously interferes with a child's ability to accomplish age-appropriate developmental and social tasks.

23 Pa.C.S.A. § 6303.

§ 5985.1, it is waived because Father did not object to DHS's request during the relevant hearing discussed above. *See* N.T., 6/30/22, at 11; *see also* *State Farm Mutual v. Dill*, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (citation omitted) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated").

Instantly, the trial court concluded that DHS proved by clear and convincing evidence that Father was a perpetrator of "child abuse" for his failures to act. *See* Trial Court Opinion, 7/18/23, at 7. The court explained, as follows.

> B.P. was the perpetrator of multiple instances of sexual abuse against Child. The court also finds that Child brought these instances of sexual abuse to the attention of Father and Mother and that both parents suppressed the allegations and instructed Child to not report the allegations to anyone else while allowing B.P. to continue residing in the family home with Child. Once the trauma of these instances of sexual abuse became too much for Child to handle on her own without the support of a family member, she was brought to the CRC in a suicidal state and made the report of sexual abuse which was relayed to authorities and gave rise to the matter at issue. Mother and Father continued to deny that the allegations made by Child have merit and have done everything within their power to support B.P. to the detriment of Child. Parents' actions and inactions constituted instances of child abuse as perpetrators by omission. Specifically, their failures to act constitute child abuse pursuant to 23 Pa.C.S.A. §§ 6303(b.1)(3), (4), (6). . . .

Trial Court Opinion, 7/18/23, at 7 (cleaned up). The court's conclusions are based on crediting the testimony of Child and Ms. Barr and finding Father's testimony incredible. Specifically, the court found:

Child was consistent and unwavering in the allegations she made against B.P. and about the fact that she informed both of her parents of the sexual abuse inflicted upon her by him, and that her parents did nothing but attempt to cover the situation up and put Child at continued physical and emotional risk. The failure to act and respond appropriately by both parents caused Child serious mental injury that included her reporting to Ms. Barr that she wanted to kill herself.

This court was not persuaded by Father's testimony and found the assertions he made under oath to be incredible. Father testified bluntly that Child was lying and that B.P. never sexually abused her. The two reasons he provided for his belief that she was lying were unconvincing and irrational. First, Father testified that Child created the allegations against B.P. because Father confiscated her cell phone and computer and limited her social media access. It defies basic logic that a 15-year-old would allege specific instances of sexual abuse against her adult brother, claim to be suicidal, and subject herself to foster care and multiple years of court supervision and appearances because her cell phone and computer were taken away. Child never recanted the allegations against her brother and parents and her allegations remained consistent. Father also testified that in all the years that Child resided in the family home, she had never been in a room with B.P. or anyone else without a parent being present. This court found this assertion to be equally as unpersuasive and untruthful as the first.

*Id.* at 6-7 (footnote omitted) (cleaned up). We discern no abuse of discretion.

Father testified that he believes Child is lying about being sexually abused by B.P. at the age of five or six and again at age eleven for the reasons stated by the trial court. *See* N.T., 3/24/23, at 33-37, 39-41. In addition, Ms. Barr testified that she interviewed Father as part of her investigation of the CPS report, and "he did not believe the allegations. He didn't believe that [B.P.] would do something to [Child] of this extent." *Id.* at 18. Ms. Barr continued to testify on direct examination, as follows.

- 10 -

Q. And did he give a reason as to why he was not believing [Child's] statements?

A. Again, . . . the situation of being on social media came up. Father stated that he didn't allow [Child] to be on social media, and that this could be a reason why she is making up allegations.

**Q. And did you address with Father that [Child] stated that her parents knew of [her alleged sexual abuse by B.P.] prior to DHS's involvement?**

**A. Yes, he also denied that he knew.**

Q. And in your interview with Mother or Father was there any discussion about if they were aware if [B.P.] and [Child] had any alone time together growing up?

A. I don't remember that.

*Id.* at 18-19 (emphasis added).

As such, competent evidence from Child and Ms. Barr supports the court's findings that Child was sexually abused by B.P., disclosed the abuse to Father, but Father disregarded it and allowed B.P. to remain in the home with Child. *See In the Interest of R.C.-G.*, 292 A.3d at 587 (this Court must accept the findings of fact and credibility determinations of the trial court if they are supported by the record). Thus, we discern no abuse of discretion by the court concluding that Father is a perpetrator of "child abuse" against Child pursuant to subsection 6303(b.1)(3), (4), and (6) of the CPSL.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/8/2024